202            JACKSON :

---

---

STATE, *ex rel.*, *v.* L. P. COOPER, JUDGE.

(*Jackson.*     May 25,     1901.)

1. MANDAMUS. *To control Judge's action touching bills of exceptions.*

   This Court has undoubted power. in a proper case, and in aid of its appellate jurisdiction, to compel a trial Judge to sign a bill of exceptions. (*Post, pp., 209–211.*)

   Cases cited: State *v.* Hall, 3 Cold., 255; State *v.* Elmore, 6 Cold., 531; State *v.* Hall, 6 Bax., 7; Memphis *v.* Halsey, 12 Heis., 214; Ingersoll *v.* Howard, 1 Heis., 248; Alexander *v.* State, 14 Lea, 91; Van Vabry *v.* Staten, 88 Tenn., 334; State *v.* Sneed, 105 Tenn., 711; Galloway *v.* Fleing, 2 Shann., 614.

2. SAME. *Same.*

   But a trial Judge who has signed bill of exceptions, certifying the facts as he understands them, will not be compelled to certify additional matters relating to occurrences in open Court, *e. g.*, the *voir dire* examination of a juror, where he denies upon personal knowledge and recollection the correctness of such additional matters, and there is no sufficient proof in the record to overcome the Judge's recollection of the facts, even if such proof could be sufficient for that purpose in any case. Proof by affidavit or otherwise, not made part of the record sent up, will not be considered in such case to impeach trial Judge's recollection. (*Post, pp., 209–213.*)

3. BILL OF EXCEPTIONS. *Matters not part of.*

   A mere oral statement and offer to prove certain facts on motion for new trial without producing and setting out the proof, by affidavit or otherwise, in the bill of exceptions, or asking time to do so, presents no question that can be considered by this Court. (*Post, pp. 211, 212.*)

---

FROM SHELBY.

---

Appeal from the Criminal Court of Shelby County. L. P. COOPER, J.

State, *ex rel.*, *v.* L. P. Cooper, Judge.

A. B. PITTMAN and B. HARRIS MOTLEY for petitioner.

ATTORNEY-GENERAL PICKLE for Judge Cooper.

WILKES, J.    This is a petition for mandamus to compel Hon. L. P. Cooper, Judge of the Criminal Court of Shelby County, to sign a bill of exceptions in the case of the State of Tennessee *v.* John Shaw, convicted of murder and sentenced to be hanged by that Court, and who has appealed to this Court.

The petition alleges that a true bill of exceptions was presented to the said Judge by the counsel for the petitioner, who was the defendant in that cause, and that he refused to sign the same, and has signed another, imperfect and untrue, bill of exceptions, which is now on file with the transcript in this Court.    It further alleges that a true bill of exceptions is essential to the rights of petitioner.

The petition further avers that counsel for petitioner presented to said Judge a statement, as follows: "J. F. Monroe, one of the jurors trying this case, was, when being examined on his *voir dire* touching his competency to sit on this case, asked by counsel whether or not he had served on the regular panel of a jury in Shelby County, Tennessee, within the past two years, and the said Monroe answered that he had not;" and requested that it be incorporated into the bill of exceptions which is now on file in this Court, and which bill is imper-

fect without said statement; that said statement is true and embodies the question and answer of said J. F. Monroe, under oath on his *voir dire* examination, and ought to have been incorporated in said bill of exceptions, and said Cooper refused to incorporate it therein; that petitioner, on a motion for a new trial, offered to produce witnesses who were then present in the court-room and heard the question and answer, and the Judge refused to hera any evidence on the subject.

Petitioner further avers that he is innocent of the crime for which he has been convicted, but that he has not been tried by a jury of lawful men; that J. F. Monroe had perjured himself, and was incompetent to sit on the jury.

The prayer is that the trial judge be required to sign the bill of exceptions tendered to him, and with the petition tendered to this Court, or that an alternative writ of mandamus issue, compelling him to sign the said bill or show cause why he should not do so, [and if not entitled to that relief then that a peremptory or alternative writ issue to compel him to incorporate in the bill of exceptions already signed the statement quoted above, showing the question put to and answer made by said J. F. Monroe on his "*voir dire*" examination, and that this Court prescribe in what manner and at what place the proof as to the issues raised by the petition shall be taken.

The petition is sworn to by petitioner and counsel. It is accompanied by the affidavits of Rowan

A. Greer, attorney, Chas. Glass, R. H. Motley, attorney, and by the certificate of the Clerk and A. B. Pittman, an attorney, all of them going to substantiate in whole or part the statement made in the petition.

Mr. Greer states that he heard the question asked of Mr. Monroe, and heard him answer that he had not served; that the question was twice asked and twice answered, and that he was impressed at the time that the answer was untrue, since he knew, as a fact, that Monroe had served upon a regular panel in Shelby County within two years next preceding, and that he was present in the Court room when the motion for a new trial was made, and was ready to give this statement in an affidavit.

Charles Glass states that he was present at the trial, was paying careful attention, and could not be mistaken about the fact; that the question was twice asked of Monroe, and twice answered by him in the negative.

Mr. Motley testifies that he was the attorney who examined Monroe upon his "*voir dire*," and that he was asked the question by himself, and that Monroe answered in the negative; that he was present on this motion for a new trial, when his associate attorney, Mr. Pittman, proposed to prove that Monroe had been asked the question, and had answered in the negative, and also to prove by the Clerk (Boswell) that Monroe had served on a regular panel

within two years, and this was refused by the trial Judge and motion overruled.

L. E. Boswell states that he is Clerk of the Circuit Court of Shelby County; that Monroe was on the regular jury in that Court in November, 1900, serving from the nineteenth to the twenty-second, when it coming to the knowledge of the Court that he had served on a regular panel within two years next preceding that date, he was discharged from further service, and that he was present on the motion for a new trial in Shaw's case, and ready to give testimony as now stated.

The trial judge indorsed on the bill of exceptions presented to him and asked to be signed the following: "I have signed a full bill of exceptions, which is a true one, and after a careful consideration of the whole matter, I am thoroughly satisfied that the bill signed by me is correct in every particular. I refuse to sign this, which is tendered to me for the first time to-day. The bill of exceptions signed by me is one heretofore tendered to me by counsel for defendant, which, with corrections and additions made by me, is the true bill in this cause. The defendant's counsel objected to the corrections and additions thereto, and requested that the above be signed as the true bill of exceptions, which I decline to do. May 31, 1901. L. P. Cooper, Judge."

The original bill of exceptions signed by the trial judge, and which is a part of the record, states in

addition that, on the motion for a new trial, the Court refused to hear evidence on the question of the examination of the juror, Monroe, and gave as his reason that he remembered distinctly that no such question was asked of the juror, nor was such answer given. The counsel offered to introduce the Clerk of the Court to prove that Monroe had served on a regular jury panel within two years, and the trial judge refused to allow this to be done, as that was not in issue before the Court. He also proposed to introduce attorney Greer to show that the witness, Monroe, was examined and answered as stated, and this was refused. Thereupon a Deputy Sheriff stated that one of the jurors in the Shaw case desired to make a statement to the Court, and did state that Monroe told him that he had not been examined as to his service on the jury. This was also excluded, the Court stating that it was improper, and further that the Court knew that the examination had not been made, and the question had not been asked nor answer given.

The answer of Judge Cooper to the petition for mandamus has been filed, in which he states positively and emphatically that the bill of exceptions filed by him originally in the case is a true and correct and perfect one, and that the one now asked to be signed is not true and correct. He admits that he refused to incorporate into the bill of exceptions the matter in relation to the juror, Monroe, because the question indicated was not asked Monroe

as stated on his "*voir dire*" examination, and he expressly and unequivocally denies that such question was asked, and states that at the time he was no-ticing the examination of Monroe and paying atten-tion thereto, and his recollection is distinct and pos-itive that the question as indicated was not asked. He further states that on the motion for a new trial, counsel orally offered to introduce witnesses to prove that the question was asked, but no affidavit was at that time offered in support of the motion, and no time was requested to prepare such affidavit, and he, as trial Judge, refused to stay or delay pro-ceedings in order to allow counsel to go and get witnesses, for the reason that he knew the question had not been proposed to said Monroe.

He repeats in emphatic terms that the bill of ex-ceptions which he signed and had filed contained a true and perfect statement of the proceedings had in the cause, both on the trial ,and subsequent thereto. He attaches to his answer the affidavit of the juror, J. F. Monroe, and his fellow-jurors, E. S. Rich-mond, T. B. Todd, and of Walter L. Clark and J. P. Hefley, who state positively that they were pres-ent when Monroe was put on his "*voir dire*" examin-ation, and that the question was not asked Monroe, as is claimed, whether he had served upon the reg-ular panel of any jury in Shelby County within two years preceding, and Monroe adds that the only ques-tion asked him was whether he would render a fair and impartial verdict if taken, to which he answered

State, *ex rel.*, *v.* L. P. Cooper, Judge.

yes, and if he would permit the fact that defendant was a negro, and the person alleged to have been raped was a white girl to prejudice him or influence him against defendant, and, upon his answering no, he was accepted as a juror.

The power of this Court in aid of its appellate jurisdiction to compel a trial judge to sign a bill of exceptions is too well established for question. *State* v. *Hall*, 3 Cold., 255; *State* v. *Elmore*, 6 Cold., 531; *State* v. *Hall*, 6 Bax., 7; *Memphis* v. *Halsey*, 12 Heis., 214; *Ingersoll* v. *Howard*, 1 Heis., 248; *Alexander* v. *State*, 14 Lea, 91; *Van Vabry* v. *Staton*, 88 Tenn., 334; *Galloway* v. *Fleing*, 2 Shannon, 614; *State* v. *Sneed*, 21 Pickle, 711.

In *Van Vabry* v. *Staton*, 88 Tenn., 334, it was said that this Court would not compel a trial Judge by peremptory mandamus, to sign a particular bill of exceptions, made out and presented by counsel with request that he sign it without alteration or refuse to do so, when the trial Judge, upon his oath, denies its correctness and the evidence is conflicting upon this point. The query is put in that case whether a trial Judge will be compelled in any case to sign a particular bill of exceptions, the correctness of which he denies on oath. The Court said: "In *Sykes* v. *Ransons*, the power to compel the signing of a particular bill was broadly asserted." 6 Johnson, 279.

"In *Bradstreet* v. *Thomas*, 4 Peters, 102, the Supreme Court of the United States held that it could

not require a Judge to sign a bill of exceptions which he asserted did not contain the truth, and this case treats the decision of the trial Judge as final and conclusive. The great weight of authority is in accord with the holding of the Supreme Court of the United States." 3 Enc. Pl. & Pr., 491, and notes.

The case of the *State* v. *Hall*, 3 Cold., 255, was an application to compel the trial Judge to sign a particular bill or show cause why he did not. It was not a case of peremptory mandamus to compel the Judge to sign, but in the alternative to sign or show reasons. We think our cases go only to the extent of holding that the trial Judge may be required either to sign a particular bill or show cause why he will not do so, but they do not go to the extent that he may be required to sign one which he states is not correct. The ultimate decision as to what a bill of exceptions should contain rests with the trial Judge. And this is so to the extent that he may even decline to sign a bill consented to and presented by the attorneys on both sides, and he may change it when both parties insist that it is already correct, in his sound discretion and in order that it may embody the facts as he understands them. *Beaven* v. *The State*, 58 Ind., 530 ; 3 Enc. Pl. & Pr., 446.

He may not refuse to sign a bill without more, but must sign one presented or propose corrections,

or sign what he deems a proper and true bill. 3 Enc. Pl. & Pr., p. 448.

The mere act of signing a bill, which the trial Judge concedes is correct, is a ministerial one, and he may be compelled in such case to sign. *Jelley* v. *Roberts*, 50 Ind., 1. But when the question is whether the bill is correct and truthful, and should be signed as presented, it becomes a judicial one, which the Appellate Court will not settle. *State* v. *Hall*, 3 Cold., 262 ; *Miller* v. *Koger*, 9 Hum., 236 ; *Hake* v. *Strubel*, 121 Ill., 325 ; 3 Enc. Pl. & Pr., 491.

In the present case necessary steps have not been taken to put the record in proper shape. No time was requested to prepare affidavits to be incorporated in the record, and the only one that was offered was proposed after the application had been acted upon. It is true counsel stated that witnesses were in court and others could be had and would testify, but all this was done orally, without any affidavits, and no request was made for time to prepare such affidavits, and the trial Judge's recollection being distinct as to the matter, he refused to stay proceedings to allow counsel to go and get witnesses. But counsel might have prepared the affidavits and presented them at any time before court adjourned, and asked that they be incorporated in the bill of exceptions.

It would certainly be an anomaly to compel a trial Judge to certify the existence of a fact which

he emphatically denies.    If he concedes that the fact
desired to be incorporated does exist, or if he does
not remember, or if he does not deny its existence,
but for any insufficient reason refuses to incorporate
it in the bill of exceptions, he may be required to do
so by mandamus.    But when the matter is brought
to his attention and he states in the bill of excep-
tions that the fact does not exist, and the statement
desired to be incorporated is not true, and that he
has signed a correct bill, stating the actual facts, he
cannot be required to sign one that he states is in-
correct and contains untrue statements, and the Ap-
pellate Court in such case will not require him to
do so unless upon the clearest and most convincing
showing made to appear properly before the Court
below and incorporated in the record sent to this
Court.    3 Enc. Pl. & Pr., 491, and note.

A different rule would lead to endless confusion.
It would substitute the recollections of counsel and
bystanders for that of the trial Judge.    It would
virtually put the Judge himself on trial whenever a
difference arose between him and litigants or their
counsel.    Affidavits and counter affidavits might be
heard, and a trial within a trial would result.    And
upon this trial the Judge himself, whose action is
being questioned, would preside, and to his decision
at last the case must be finally subjected, or he
must be arraigned for trial before this Court or a
commission.

State, *ex rel.*, *v.* L. P. Cooper, Judge.

It may be that cases of hardship will arise, but this is an incident to all human proceedings, and a different rule would lead to much more serious complications and difficulties. Without holding that a case cannot be made out and properly presented which would call for the interposition of this Court, we are of opinion such case is not made out by the record.

We are of opinion that under the facts as they appear under this petition this Court cannot grant the writ of mandamus as asked for, and it is refused.