**STATE of Tennessee on relation of Gloria Elizabeth Cummings WINFREY**

v.

**Paul R. SUMMERS, Chancellor, and Joe Cocke, Clerk and Master of the Chancery Court of Fayette County.**

Supreme Court of Tennessee.

June 3, 1974.

Hal Gerber, Joseph L. Tagg, III, Memphis, for petitioner.

John S. Wilder, Sr. & Assoc., Somerville, for respondents.

OPINION

McCANLESS, Justice.

The solicitors representing Gloria Elizabeth Cummings Winfrey filed with the Clerk of the Supreme Court at Jackson a petition for the writ of mandamus to require Chancellor Paul R. Summers to sign and Clerk and Master Joe Cocke to file a bill of exceptions in a suit styled Robert Hill Winfrey, Jr., complainant, v. Gloria Elizabeth Cummings Winfrey, defendant, cause 4214 in the Chancery Court of Fayette County. The Chancellor and the Clerk and Master filed their separate answers to

the petition and the petitioner filed a brief to which exhibits relevant to the controversy are appended. Counsel presented oral arguments in support of their respective contentions.

There appears to be no controversy about the facts, and we will recite such of them as are shown by the pleadings and appear to us to be important to the issues of law that are made by the petition and by the answers thereto.

The final decree in the Winfrey suit was pronounced on October 5, 1973. It granted Mrs. Winfrey an appeal and ninety days within which to file her bill of exceptions. The trial had not been recorded and transcribed.

On November 23, 1973, the solicitor who had represented Mrs. Winfrey at the trial was relieved of his duties as counsel, and Hal Gerber and Joseph L. Tagg, III, were substituted as her solicitors. On November 28, 1973, they informed John S. Wilder, Sr., the solicitor representing the plaintiff in the suit, that they would send him a narrative bill of exceptions when they should complete it.

The solicitors for Mrs. Winfrey delivered a copy of their proposed narrative bill of exceptions to Mr. Wilder on December 3, 1973, but he declined to approve it. Thereafter, on Friday, December 7, 1973, counsel delivered their proposed bill of exceptions to Mr. Wilder but he refused to approve it. They then informed Mr. Wilder that they intended to file it and thereafter on the same day counsel prepared an affidavit that the narrative bill of exceptions had been delivered to adversary counsel who had refused to accept it. Mr. Tagg, one of Mrs. Winfrey's solicitors, attempted to file the narrative bill and the affidavit but the Clerk and Master refused to file them but marked them "tendered" or "lodged" and delivered them to Chancellor Summers. The Chancellor refused to sign the narrative bill of exceptions. In his answer to the petition he gave as his reasons for refusing to approve it the following:

"A. That TCA 27–110 requires that the narrative Bill of Exceptions be filed before I can sign it. It was not filed by the Clerk and Master, but merely tendered on December 7, 1973.

"B. That the narrative Bill of Exceptions which was tendered is not a true record in the cause of Winfrey vs. Winfrey, No. 4214, Chancery Court of Fayette County, Tennessee. This can be seen in appendix on pages 9b and 10b wherein the relator states that the Chancellor stated that 'both parties were guilty of cruel and inhuman treatment towards each other'. As can be seen from this, no divorce could be granted in this cause. This is but one example of many of the inaccuracies found in the relator's narrative Bill of Exceptions."

On January 3, 1974, the solicitors representing the parties agreed on a narrative bill of exceptions which the solicitors representing Mrs. Winfrey attempted to file on January 4, 1974. The Clerk and Master refused to file it because it was presented on the ninety-first day after October 5, 1973, or after the ninety day period allowed in the decree had expired. The Chancellor asserted that the narrative bill of exceptions had not been filed and for that reason he could not sign it. We consider from the facts presented to us that Mrs. Winfrey's solicitors did everything that they reasonably could have done to give notice to their adversaries and to file the bill of exceptions. They presented it to the Clerk and Master who placed it in the hands of the Chancellor who examined it and declined to approve it.

We observe nowhere in the documents before us that the Chancellor made any suggestion to the solicitors with regard to the inaccuracies he mentioned in his answer; nor does it appear that he suggested the elimination of the statement attributed to him that "both parties were guilty of

cruel and inhuman treatment toward each other."

The part of the ninety day period that remained after the proposed narrative bill of exceptions reached the Chancellor's hands on December 7, 1973, was according to our computation twenty-seven days during which the Chancellor might reasonably have called to counsels' attention the errors he had found to exist in the draft he had examined.

In the Court's opinion, written by Judge Wilkes, in State ex rel. Shaw v. Cooper, 107 Tenn. 202, 64 S.W. 50 [1901], the following appears and, in our opinion, is the law today:

> " . . . We think our cases go only to the extent of holding that the trial judge may be required either to sign a particular bill, or show cause why he will not do so, but they do not go to the extent that he may be required to sign one which he states is not correct. The ultimate decision as to what a bill of exceptions should contain rests with the trial judge. And this is so to the extent that he may even decline to sign a bill consented to and presented by the attorneys on both sides, and he may change it when both parties insist that it is already correct, in his sound discretion, and in order that it may embody the facts as he understands them. Beavers v. The State, 58 Ind., 530; 3 Enc. Pl. & Prac., 446.

> "He may not refuse to sign a bill without more, but must sign one presented, or propose corrections, or sign what he deems a proper and true bill. 3 Enc. Pl. & Pr., p. 448."

It appears to us, as we have observed that Mrs. Winfrey's solicitors did everything they reasonably could have done to file her bill of exceptions within the time allowed and that they would have done so had the Chancellor indicated to them the corrections they should make to achieve accuracy.

 The "lodging" of the bill of exceptions was in legal effect a filing, and the Clerk and Master was without authority to refuse to file it. The plaintiff, Robert Hill Winfrey, waived his right to object to the bill of exceptions when he failed, within ten days after such filing to file with the Clerk and Master his written objections to it. Section 27–110, T.C.A

Since counsel for both parties agreed to the bill of exceptions on January 3, 1974, the Chancellor is directed to sign it—subject to any corrections he may now make. The Clerk and Master will file the bill of exceptions when it is presented to him.

DYER, C. J., and CHATTIN and FONES, JJ., and LEECH, Special Justice, concur.